**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Isis Gipson,                                                      Civil No. 25-3014 (DWF/DJF)

                            Plaintiff,

                                                                 **MEMORANDUM**
v.                                                               **OPINION AND ORDER**

Boston Scientific Scimed Inc.,

                            Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Boston Scientific Scimed Inc.'s

("Boston Scientific") motion to dismiss (Doc. No. 20) *pro se* Plaintiff Isis Gipson's

amended complaint (Doc. No. 12 ("Am. Compl.")).  Gipson opposes the motion.  (Doc.

No. 27.)  For the reasons set forth below, the Court grants the motion and dismisses

Gipson's claims.

## BACKGROUND

Gipson was employed by Boston Scientific from July 2023 to September 2023.

(*See* Am. Compl. at 3.)  She alleges numerous violations of her rights during that

employment.

First, Gipson alleges pervasive harassment and discrimination by coworkers.

After just two weeks of employment, she claims that she was subjected to daily verbal

sexual harassment by her male coworkers:  "They would repeatedly chant that Plaintiff

needed to perform a certain act to her genitals while she was performing her duties."  (*Id.*

at 10.)  She alleges that the "statements were targeted, vulgar, and persistent" and created a hostile work environment.  (*Id.*)  She reported the harassment to Human Resources, but no action was taken.  (*Id.*)  The alleged harassment escalated after that report.  (*Id.*)  Coworkers also "made malicious, baseless statements about her mental state, hygiene, and behavior."  (*Id.*)  Gipson also alleges that her coworkers treated her as though she had a mental health impairment and intensely scrutinized her work.  (*Id.* at 12.)

Gipson further alleges that Boston Scientific violated her privacy rights.  As part of her employment, Boston Scientific required Gipson to install Microsoft Intune MDM software on her personal phone.  (*Id.* at 10.)  The software's notice claimed that Boston Scientific did not have access to personal data.  (*Id.*)  But Gipson alleges that coworkers made specific and real-time comments about her private routine and environment that suggest unauthorized access to her phone.  (*Id.*)  She therefore claims that her personal device was accessed without permission.  (*Id.* at 12-13.)  Gipson reported this issue to Human Resources, as well.  (*Id.*)  But, again, no action was taken.  (*Id.* at 10-11.)

Gipson alleges severe emotional distress as a result of the hostile workplace.  (*Id.* at 10.)  In September 2023, Gipson resigned, believing that the conditions of her employment were so intolerable as to make resignation her only option.  (*Id.*)

On June 11, 2024, Gipson submitted a complaint to the Equal Employment Opportunity Commission ("EEOC").  (*Id.* at 3.)  On June 12, 2024, the EEOC issued Gipson a notice of her right to sue.  (*Id.* at 3-4; Doc. No. 12-1.)

In September 2024, Gipson filed her first lawsuit.  Complaint, Gipson v. RJ, No. 24-cv-3615 (D. Minn. Sep. 10, 2024).  The first lawsuit was dismissed because the

2

complaint named only coworkers, not her employer, and she therefore failed to assert a plausible Title VII action. *Gipson v. RJ*, No. 24-cv-3615, 2024 WL 4804090, at *1 (D. Minn. Nov. 15, 2024). In November 2024, Gipson filed a second lawsuit, this time against the EEOC for closing its investigation into her EEOC complaint. Complaint, Gipson v. EEOC, No. 24-cv-4283 (D. Minn. Nov. 25, 2024). The second lawsuit was also dismissed for failure to file against her employer. *Gipson v. EEOC*, No. 24-cv-4283, 2025 WL 227297, at *2 (D. Minn Jan. 17, 2025). In March 2025, Gipson filed a third lawsuit, this time naming Boston Scientific. Complaint, Gipson v. Boston. Sci. Scimed, Inc., No. 25-cv-956 (D. Minn. Mar. 14, 2025). The third lawsuit was dismissed because Gipson's Title VII claims were untimely. Order Dismissing Case, Gipson v. Boston. Sci. Scimed, Inc., No. 25-cv-956 (D. Minn. May 6, 2025).

On July 28, 2025, Gipson filed the current action. (Doc. No. 1.) She brings eighteen counts against Boston Scientific: sexual harassment in violation of Title VII (Count I); hostile work environment in violation of Title VII and the Minnesota Human Rights Act ("MHRA") (Count II); retaliation in violation of Title VII and the Minnesota Whistleblower Act ("MWA") (Count III); (4) constructive discharge in violation of Title VII and the MHRA (Count IV); discrimination based on a perceived disability in violation of the Americans with Disabilities Act ("ADA") and MHRA (Count V); invasion of privacy (Count VI); violation of Minnesota's data-breach-notification law, Minn. Stat. § 325E.61 (Count VII); violation of the Computer Fraud and Abuse Act ("CFAA") (Count VIII); violation of the federal wiretap act (Count IX); defamation (Count X); intentional infliction of emotional distress ("IIED") (Count XI); retaliation for

3

protected speech in violation of the First Amendment (Count XII); unlawful search and surveillance in violation of the Fourth Amendment (Count XIII); violation of due process and equal protection in violation of the Fifth and Fourteenth Amendments (Count XIV); violation of bodily autonomy and privacy rights in violation of the Ninth Amendment (Count XV); spoliation of evidence (Count XVI); breach of contract (Count XVII); and failure to prevent conspiracy to violate civil rights under 42 U.S.C. § 1986 (Count XVIII). (Am. Compl. at 11-14.) Boston Scientific moves to dismiss all counts. (Doc. No. 20.)

## DISCUSSION

Gipson categorizes her claims into five broad categories: employment discrimination and retaliation; privacy, surveillance, and data misuse; defamation and emotional distress; constitutional violations; and conspiracy and breach of duties. (*See* Am. Compl. at 11-14.) The Court will discuss each category in turn.

## I.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may also consider certain matters

outside of the pleadings, including matters of public record or materials embraced by the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Employment Discrimination and Retaliation

Gipson alleges that she was subjected to sexual harassment, surveillance, discrimination, and retaliation in the workplace in violation of Title VII, the MHRA, the MWA, and the ADA. (Am. Compl. at 11-12.)

### A. Statutes of Limitation

Title VII, the ADA, and the MHRA each impose a statute of limitation. To bring a Title VII claim, an employee must first file a charge with the EEOC within 300 days of the allegedly unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); *see also, e.g.*, *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 898 (8th Cir. 2024). Then, once a plaintiff receives a notice of their right to sue from the EEOC, the plaintiff has ninety days to file an action. 42 U.S.C. § 2000e-5(f)(1*); see also, e.g.*, *Maegdlin v. Int'l*

5

*Ass'n of Machinists & Aerospace Workers, Dist. 949*, 309 F.3d 1051, 1054 (8th Cir. 2002) (affirming dismissal of Title VII claims for untimeliness). The ADA follows the same timeline—the claim must be brought within 300 days of the allegedly discriminatory practice and within ninety days after receiving the notice of right to sue. *See* 42 U.S.C. § 12117(a) (applying the procedures from § 2000e-5); *see also Williams v. Thompson Corp.*, 383 F.3d 789, 790 (8th Cir. 2004) (analyzing Title VII and ADA timeliness together). An MHRA claim must be filed within one year of the allegedly discriminatory practice. Minn. Stat. § 363A.28, subdiv. 3(a) (2025); *see also Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005).

The allegedly discriminatory practices occurred between July and September 2023 and the EEOC issued the notice of Gipson's right to sue on June 12, 2024. Gipson did not file the current action until July 28, 2025, almost two years after the conduct occurred and well over a year after receiving the notice. Gipson's first complaint met the timeliness requirements, but that case was dismissed. The September 2024 complaint and July 2025 complaint are independent of each other, so the September 2024 complaint does not save Gipson's claims in the current case. *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989) (explaining that relation back under Fed. R. Civ. P. 15(c) applies only within a single case, not to an entirely new pleading). Gipson's claims are untimely and barred by the respective statutes of limitations.

A court may equitably toll a statute of limitations if circumstances outside of the plaintiff's control warrant such treatment. *E.g.*, *Hill v. John Chezik Imps.*, 869 F.2d 1122, 1124 n.2 (8th Cir. 1989) (listing situations in which equitable tolling is appropriate).

6

Gipson argues that equitable tolling should apply because she is *pro se* and has acted diligently trying to learn the legal system, and because the events giving rise to the lawsuit have impacted her emotionally.[1]  (Am. Compl. at 6-7.)  Self representation is not sufficiently extraordinary to warrant equitable tolling.  *Cf. Shoemate v. Norris*, 390 F.3d 595, 598 (2004) (holding that *pro se* status did not justify equitable tolling for post-conviction relief).  Gipson does not appear to have been neglectful, but that does not excuse her from statutory requirements.  *See generally Jenkins v. Mabus*, 646 F.3d 1023, 1028-29 (8th Cir. 2011) (explaining that equitable tolling is reserved for situations completely out of the plaintiff's control).  Further, Gipson does not explain how the emotional distress prevented her from filing a complaint against the correct defendant.  The Court does not doubt that the events were emotionally distressing, but that distress did not prevent her from timely filing against other defendants.  *See generally Rassier v. Sanner*, 996 F.3d 832, 838-39 (8th Cir. 2021) (rejecting request for equitable tolling because plaintiffs knew their rights were violated before the statute of limitations expired).  Gipson has not demonstrated that she is entitled to equitable tolling.  Gipson's Title VII, ADA, and MHRA claims—Counts I, II, IV, and V, and part of Count III—are dismissed.

---

[1]     Boston Scientific argues that Gipson waived any argument about equitable tolling because she did not specifically refute Boston Scientific's arguments on the issue in her opposition brief.  (*See* Doc. No. 30 at 5-6.)  While she did not specifically respond to all of Boston Scientific's points, Gipson made arguments in favor of equitable tolling in her complaint and more generally in her opposition brief.  The Court does not find Gipson's equitable tolling arguments to be waived.

### B.    Minnesota Whistleblower Act

The remaining claim in the employment discrimination and retaliation category is the claim for retaliation in violation of the MWA.  (Am. Compl. at 11.)  In Count III, Gipson alleges that she engaged in protected activity by reporting sexual harassment, surveillance, and data misuse, and that she experienced adverse employment action in response.  (*Id.*)  Specifically, Gipson alleges "ostracization, intensified monitoring, and job-related penalties."  (*Id.*)

This claim is preempted by the MHRA.  At the time of Gipson's employment, the MHRA provided that it was the exclusive remedy for acts declared unfair under the statute.  Minn. Stat. § 363A.04 (2023), *amended by*, Act of May 15, 2024, ch. 105, § 6, 2024 Minn. Laws 1073, 1074.[2]  The operative version of the MHRA preempted a common law cause of action if the factual basis and injuries for the claim would also establish an MHRA violation and the defendant's obligations to the plaintiff were the same under both causes of action.  *See Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 77 n.12 (Minn. 2020).  When MHRA and MWA claims were predicated on the same underlying adverse employment practice, the MWA claim was preempted.  *Williams v. St. Paul Ramsey Med. Ctr., Inc.*, 551 N.W.2d 483, 485-86 (Minn. 1996).  Both Gipson's MWA

---

[2]     In 2024, after the conduct at issue here occurred, the MHRA was amended to not preempt other rights and remedies.  That amendment does not apply retroactively.  *See* Minn. Stat. § 645.21 (2025) ("No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.").  The Court applies the version operative in 2023.

retaliation claim and MHRA claims are predicated on the sexual harassment, surveillance, and data allegations.  The MWA claim is therefore preempted.

Moreover, the claim is substantively deficient.  The MWA prohibits retaliation by an employer against an employee because the employee "in good faith, reports a violation, suspected violation, or planned violation of any [law] to an employer or to any governmental body or law enforcement official."  Minn. Stat. § 181.932, subdiv. 1(1) (2025).  The violation must impact more people than just the whistleblower.  *Williams*, 551 N.W.2d at 484 n.1 ("The popular title of the Act connotes an action by a neutral—one who is not personally and uniquely affronted by the employer's unlawful conduct but rather one who 'blows the whistle' for the protection of the general public or, at the least, some third person or persons in addition to the whistleblower.").  The alleged violation Gipson reported only impacted her.  An MWA claim is therefore not the appropriate vehicle.  The remainder of Count III is dismissed.

## III.    Privacy, Surveillance, and Data Misuse

Gipson groups her next four claims into the category of privacy, surveillance, and data misuse.  (*See* Am. Compl. at 12.)

### A.    Invasion of Privacy

In Count VI, Gipson alleges that her private communications and personal device activity were accessed or surveilled without her consent, constituting an invasion of privacy.  (*Id.*)  Minnesota recognizes three causes of action in tort under the umbrella of invasion of privacy:  intrusion upon seclusion, appropriation, and publication of private facts.  *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 236 (Minn. 1998).  "Intrusion

upon seclusion occurs when one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person." *Id.* at 233 (citation modified).  Appropriation occurs when "one appropriates to his own use or benefit the name or likeness of another." *Id.* (citation modified).  Publication of private facts occurs when one publicizes highly-offensive matter that is not of concern to the public.  *Id.*; *see also Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 557 (Minn. 2003) (holding that a publication-of-private-facts claim requires dissemination to the public at large).  Gipson does not allege that her identity was appropriated, nor that any information was shared outside the workplace, so the Court analyzes Count VI as an intrusion-upon-seclusion claim.

An intrusion-upon-seclusion claim has three elements:  (1) an intrusion, (2) that is highly offensive, and (3) into some matter in which a person has a legitimate expectation of privacy.  *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App. 2001).  Gipson has not sufficiently pled an intrusion.  The allegation that coworkers made comments about her private routines and environment fails to explain how her coworkers accessed information which the software did not share with Boston Scientific, let alone individual employees.  The bare bones allegations do not rise above the speculative level.  Count VI is dismissed.

**B.    Minnesota Data Breach Notification Statute**

In Count VII, Gipson alleges that her personal data was accessed and shared without authorization, and that Boston Scientific failed to notify her of the breach, in violation of Minnesota Statute § 325E.61.  (Am. Compl. at 12.)  That statute has no

private right of action. Minn. Stat. § 325E.61, subdiv. 6 (2025) ("The attorney general shall enforce this section . . . ."); *see also In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1168 (D. Minn. 2014) (dismissing claim under § 325E.61 for lack of a private right of action). Gipson accepts that her claim is legally flawed and concedes it. (Doc. No. 27 at 5-6, 14.) Count VII is dismissed.

### C.  Computer Fraud and Abuse Act

In Count VIII, Gipson alleges that individuals "potentially acting on behalf of" Boston Scientific accessed her personal devices, exceeding authorization, in violation of the CFAA. (Am. Compl. at 12.) The CFAA criminalizes various fraudulent activities that relate to computers which are used by the United States government or which affect interstate or foreign commerce. *See* 18 U.S.C. § 1030(a). A civil claim may be brought by someone injured by a violation of the CFAA. *Id.* § 1030(g); *see also Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 916 (D. Minn. 2012). Such civil claims are limited to situations where the violation:  caused loss aggregating at least $5,000; impacted or attempted to impact medical treatment; caused physical injury; threatened public health or safety; damaged a computer used for the administration of justice, national defense, or national security; or damaged at least ten computers used for government or interstate or foreign commerce purposes. 18 U.S.C. § 1030(g) (creating civil cause of action); *id.* § 1030(c)(4)(i) (listing factors that implicate § 1030(g)). Gipson has not alleged facts that fit into any of these categories. Nor has she shown the predicate CFAA violation necessary to bring a civil claim—as discussed previously, the allegations that her personal device was accessed are speculative and incomplete. Count VIII is dismissed.

### D.    Federal Wiretap Act

In Count IX, Gipson alleges that her communications were intercepted, monitored, or recorded without her consent, in violation of the federal wiretap act, 18 U.S.C. § 2511. (Am. Compl. at 12.)  The statute prohibits intentionally intercepting wire, oral, or electronic communications and the disclosure of those communications.  *See* 18 U.S.C. § 2511.  Again, Gipson's amended complaint fails to sufficiently explain the how, what, when, where, or why of the communications allegedly intercepted.  *See Hari v. Smith*, No. 20-cv-1455, 2022 WL 1122940, at *19 (D. Minn. Jan. 31, 2022) (recommending dismissal of federal wiretap claim which did not detail the interceptions), *report and recommendation adopted*, 2022 WL 612100 (D. Minn. Mar. 2, 2022).  Count IX is dismissed.

## IV.    Defamation and Emotional Distress

The next two claims are grouped into the category of defamation and emotional distress.  (Am. Compl. at 12-13.)

### A.    Defamation

In Count X, Gipson alleges that false statements were made about her mental health, conduct, and credibility, which damaged her professional reputation, constituting defamation.  (Am. Compl. at 12.)  To prevail on a defamation claim, Gipson must show that:  (1) a defamatory statement was made to another person, (2) the statement is false, (3) the statement tends to harm Gipson's reputation, and (4) the recipient reasonably understood the false statement to refer to Gipson.  *Larson v. Gannett Co.*, 940 N.W.2d 120, 130 (Minn. 2020).  Defamation must be pled with specificity.  *See*

*Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000).  Gipson does not describe any potentially defamatory statement with specificity.  She identifies only general topics of statements, but does not identify any statement, nor does she detail what the statements contained.  Indeed, Gipson concedes that the claim is insufficient. (Doc. No. 27 at 11, 14.)  Count X is dismissed.

### B.    Intentional Infliction of Emotional Distress

In Count XI, Gipson alleges that Boston Scientific engaged in surveillance, retaliation, and isolation with knowledge that such actions would result in severe emotional distress, constituting intentional infliction of emotional distress.  (Am. Compl. at 12-13.)

As with her MWA claim, the IIED claim is preempted by the MHRA.  The factual basis underlying both the IIED and MHRA claims is Boston Scientific's alleged surveillance and retaliation.  Further, Boston Scientific's duties to Gipson arise under the MHRA.  *See Peltonen v. Branch No. 9*, No. 05-cv-605, 2006 WL 2827239, at *5 (D. Minn. Sep. 29, 2006) (dismissing IIED claim due to MHRA preemption); *cf. Springer v. McLane Co.*, 692 F. Supp. 2d 1050, 1059 (D. Minn. 2010) ("[A]bsent the MHRA (or its federal analogue), there exists no independent duty to protect an employee from discrimination or retaliation.").  The IIED claim is preempted.

Moreover, even if preemption did not apply, the claim would fail for failure to state a claim.  An IIED claim requires plaintiff to establish that the defendant engaged in conduct that is extreme and outrageous, that the conduct was intentional or reckless, and that the conduct caused severe emotional distress.  *Hubbard v. United Press Int'l, Inc.*,

13

330 N.W.2d 428, 438-39 (Minn. 1983).  "Extreme and outrageous [conduct] must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."  *Id.* at 439 (citation modified).  Gipson has not sufficiently alleged conduct that rises to that level.  *Cf. Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 865, 867-68 (Minn. 2003) (concluding that use of insulting, vulgar language in the workplace was insufficient to establish extreme and outrageous conduct as a matter of law).  Count XI is dismissed.

## V.    Constitutional Claims

The next grouping of claims is constitutional violations.  (Am. Compl. at 13.) Gipson brings claims under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments via 42 U.S.C. § 1983.  (*Id.*)

Each of these amendments govern state action, not private action.  *See, e.g.*, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) (explaining that constitutional protections generally apply only to government action).  Likewise, § 1983 claims can only be brought against government actors.  *E.g.*, *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001).  The amended complaint states that the constitutional violations were perpetrated by "individuals acting in coordination with state actors or public entities."  (Am. Compl. at 13.)  But Gipson offers no explanation of how that connection was made, nor any other facts that could plausibly explain a connection between Boston Scientific and a state actor.  Boston Scientific is not a state actor, nor was it exercising a state function.  Gipson concedes this point and her constitutional claims.  (Doc. No. 27 at 6.)  Counts XII through XV are dismissed.

14

## VI.   Conspiracy and Breach of Duty

Gipson's final category of claims is conspiracy and breach of duty.  (Am. Compl. at 13-14.)

### A.   Spoliation of Evidence

In Count XVI, Gipson alleges that Boston Scientific failed to preserve digital evidence, undermining her ability to prove her claims, in violation of Federal Rule of Civil Procedure 37(e).  (*Id.* at 13.)  This is brought as a cause of action, but Gipson also requests sanctions pursuant to Rule 37(e) and the Court's inherent authority.  (Am. Compl. at 13.)

To the extent Gipson attempts to raise a claim under the Federal Rules, it must fail. The Federal Rules do not create independent causes of action.  *See Hanson v. Loparex, Inc.*, 809 F. Supp. 2d 972, 991 (D. Minn. 2011) (explaining that a claim for relief is not the proper mechanism for discovery abuses).  Gipson acknowledges this procedural issue and concedes her claim.  (Doc. No. 27 at 6.)  Count XVI is dismissed.

To the extent Gipson seeks sanctions, that is premature.  The Court has not found that Boston Scientific did not take reasonable steps to preserve electronically stored information.  Even if information has been lost due to Boston Scientific's failure to reasonably preserve, the Court does not have any information about whether that evidence could be replaced.  *See generally* Fed. R. Civ. P. 37(e) (allowing for court action if discovery is lost because a party failed to reasonably preserve it and the discovery cannot be restored or replaced).  Gipson's request for sanctions is denied as premature.

### B.     Breach of Contract

In Count XVII, Gipson alleges that Boston Scientific violated the implied terms of her employment contract, namely the implied duties of confidentiality, fair treatment, and nondiscriminatory policies.  (Am. Compl. at 14.)

The duties to treat employees fairly and in a non-discriminatory manner arise from non-discrimination laws such as the MHRA.  *See, e.g.*, *Springer*, 692 F. Supp. 2d at 1059. As the exclusive remedy, the MHRA preempts a breach-of-contract claim premised on unfair or discriminatory treatment.  *See* Minn. Stat. § 363A.04 (2023).  Further, performance of an existing legal obligation is not sufficient consideration to support a breach-of-contract claim.  *N. Pac. Ry. Co. v. Wis. Cent. Ry. Co.*, 135 N.W. 984, 986 (Minn. 1912).

Moreover, the claim does not give sufficient information for the Court to infer an implied contract was formed.  *See generally Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (requiring formation, performance of conditions precedent, and breach to be shown to sustain a breach-of-contract claim under Minnesota law).  There is no information suggesting Boston Scientific acted in a way that expressed understanding of the alleged implied duties.  *See Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1031 (8th Cir. 2020) ("An implied contract is an agreement implied in fact, founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." (internal quotations omitted)).

16

Indeed, Gipson concedes that the factual basis is lacking. (Doc. No. 27 at 13, 15.) Count XVII is dismissed.

### C.     Failure to Prevent Conspiracy to Violate Civil Rights

Finally, in Count XVIII, Gipson alleges that Boston Scientific had knowledge of civil rights violations against her and the power to prevent them, but failed to act, in violation of 42 U.S.C. § 1986. (Am. Compl. at 14.)

Section 1986 imposes a one-year statute of limitations. 42 U.S.C. § 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."). As discussed previously, Gipson filed the current action in July 2025, almost a full two years after the alleged violations ended. Her claim is time-barred. *See Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 540 (D. Md. 2014) (dismissing as time-barred a § 1986 claim that was filed more than a year after plaintiff's employment ended). Count XVIII is dismissed.

## VII.   Dismissal with Prejudice

Each of Gipson's claims is dismissed for various reasons. The question now is whether the dismissals should be with or without prejudice. Dismissal with prejudice is appropriate if amendment could not save the claim. *E.g.*, *Vue Xiong v. PHH Mortg. Corp.*, No. 13-cv-3128, 2014 WL 2893204, at *7 n.6 (D. Minn. June 26, 2014).

Claims dismissed as time-barred are dismissed with prejudice because Gipson could not save her claims by refiling. *See, e.g.*, *Perkins v. City of Minneapolis*, No. 23-cv-3810, 2025 WL 331858, at *6 (D. Minn. Jan. 29, 2025) (dismissing Title VII claim with prejudice because the statute of limitations had expired); *Clark v. Northland*

*Grp., Inc.*, No. 14-cv-606, 2014 WL 3828218, at *6 (D. Minn. Aug. 4, 2014) (dismissing time-barred ADA and MHRA claims with prejudice); *Housley v. Erwin*, 325 F. App'x 474, 475 (8th Cir. 2009) (affirming dismissal of time-barred § 1986 claim with prejudice).

For the claims Gipson conceded on legal-insufficiency grounds, she asks for leave to amend her complaint to apply the underlying factual allegations to proper claims. Such amendment is unnecessary because the Court has already done what she asks. Because Gipson is *pro se*, the Court broadly construes her complaint. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The Court has considered the factual allegations found throughout the complaint for each cause of action presented. Amendment for the purpose of applying her alleged facts more broadly is futile. The conceded claims are dismissed with prejudice.

Finally, for the substantively deficient claims, the Court finds that further amendment is unwarranted. This is now Gipson's fourth lawsuit and fifth complaint. She has had ample opportunity to revise her claims. The Court fails to see how further amendment would be useful after Gipson's persistent failures to plead. *Cf. Milliman v. County of Stearns*, No. 13-cv-136, 2013 WL 5426049, at *16-17 (D. Minn. Sep. 26, 2013) (dismissing claims in plaintiff's third case with prejudice for persistent failure to plead). Dismissal with prejudice is appropriate for all claims.

## CONCLUSION

Gipson was given five chances to timely plead plausible claims but failed to do so. The Court dismisses each of Gipson's claims with prejudice. Counts I, II, IV, V, XVIII,

18

and part of Count III are dismissed for failure to file within the statute of limitations. The

remainder of Count III, Count XI, and Count XVII are preempted. Counts VI, VII, VIII,

IX, X, XII, XIII, XIV, XV, and XVI are dismissed as either substantively or legally

deficient.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY**

**ORDERED** that:

1.     Defendant Boston Scientific Scimed Inc.'s motion to dismiss (Doc.

No. [20]) is **GRANTED**.

2.     Plaintiff Isis Gipson's amended complaint (Doc. No. [12]) is **DISMISSED**

**WITH PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  July 10, 2026                      s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge